May it please the Court, I'm Robert Jobe, and I'm appearing today on behalf of the petitioner Cleis Reyes Reyes. In this case, the Board of Immigration Appeals ruled that a Peruvian capitalist did not suffer persecution on account of political opinion when he and his fellow owners of a seafood export company were attacked by communist guerrillas for seeking to overthrow the bourgeoisie in Peru, an institute of workers' state. What Karl Marx termed a dictatorship of the proletariat. Although the Board accepted as true Mr. Reyes Reyes' testimony that Sendero Luminoso explicitly accused Mr. Reyes Reyes and his partners of, quote, making money on the sweat of the poor, it completely ignored the context in which that threat was made. So you would agree as a general proposition that if you are the victim of an extortion attempt, that in itself is not sufficient to amount to persecution? But as I said, I think in this case context is key. And for example, most importantly, in its decision, the Board never even acknowledged that Sendero Luminoso is a communist organization. But the record is clear. It is a communist organization. It's a Maoist organization. This is set forth on pages 272, 295, 322, 344. And communists obviously oppose the capitalist system. But does that mean that every attempt to shake down victims for purposes of funding the revolution amounts to persecution based on political opinion or imputed political opinion? No. But in this case, the Board accepted as true that Sendero Luminoso, this communist guerrilla organization, explicitly accused this man of making money on the sweat of the poor. In communist doctrine, what that really means is that he's a capitalist. All capitalists in communist doctrine make their money on the sweat of the poor. But going back to my earlier question, wouldn't you expect the Shining Path to go after the wealthiest in the country if their motivation is to finance the revolution? That's true. But again, why does that make it persecution on grounds of imputed political opinion? They're going after the target that makes the most sense. Because obviously they can have dual motives, and this is a case of dual motives. Here they explicitly accused him of being a capitalist. They accused him of making money on the sweat of the poor. In communist doctrine, that defines a capitalist.  Counsel. Yes, Your Honor. When Joseph Stalin was getting his start prior to the revolution of 1917, one of the ways he financed or a group that he led financed the Communist Party was by robbing banks. Clearly, communist doctrine is anti-bank and sees the banks as instrumentalities of capitalism. Are you suggesting, then, that — I'm not talking about after Mr. Stalin was successful and became the government. I'm talking about in the early days. Are you suggesting, then, that any bank he robbed or any banker he robbed automatically became eligible for asylum in the United States? No. As a victim of political oppression? No. Here, they weren't just simply attempting to get money from the business, Your Honor. They attempted to kill him and his business partners. And they accused him and his business partners, again, of being capitalists, enemies of the proletariat. They are fighting this revolution, this people's war, supposedly, on behalf of the proletariat. They see capitalists like this man as enemies of the proletariat. They didn't simply try to take their money. They tried to kill them. But how is that different from an extortionist who makes good on his demand if the extortion victim won't pay? Because here, again, they made a specific reference to his role as a capitalist, accusing him, again, of making his living illicitly off the sweat of the poor. And what is the evidence beyond the mere refusal to pay that shows that the petitioner essentially was refusing on the grounds of his political opinion? Well, that's undisputed, Your Honor. He testified on two separate occasions in the record, and it's undisputed that they had two reasons for their refusal to pay. One, obviously, is that they didn't want to part with such a large sum of money. But secondly, it's undisputed that his refusal to pay was based, in part, on his opposition to Sendero Luminoso. And it's the combination of these things that make this case, in my view, a clear-cut one. All he has to demonstrate is the reasonableness of his belief that he was targeted, in part, because of his support for capitalism. It's hard to imagine what other evidence he could have presented. The Sendero, when they spray-painted the walls of the company, and they're not going to have time to spray the entire Communist manifesto on the wall of the company. They used shorthand. They accused him of being somebody who was making his money illicitly off the sweat of the poor. They're accusing him of being a capitalist. And in their minds, that means he is an opponent of the proletariat, the people that they're fighting on behalf of. Let's assume that it was on account of a protected ground. Yes. The BIA also concluded that Reyes Reyes had not established that the government was unwilling or unable to control Shining Path. Right. What's your response to that? Well, I'd like you to look at that paragraph, if you can, while I walk through that. Sure. Because I think the language of that paragraph is very important. Can you give us that page, sir? It's on page 2 of the record. It's the bottom paragraph there on page 2. Okay. I'm with you. The one that starts, the immigration judge did not enter? No. It begins, moreover, even if we accept that Shining Path. Okay. Page 2. Okay. I got you. Yeah. They say that he has not shown that the Peruvian government was unwilling or unable to control. The only reference to his testimony is this thing that he never reported to the police any of the threats or attacks against the company. So how can he show, if he didn't report it and they didn't know about it, where's the link? I want to come to that. First, I want to make clear that the BIA didn't really consider any of his testimony. If you look at this, except for the fact that he didn't report the threats, what they said is the country profile, that's not relevant because it's dated 1997. And then they go on to say that the only other evidence in the record to shed some light on this general issue is this other background documents. Well, that's not the only other evidence. The evidence in the record is his testimony. His testimony, most importantly, on page 118, says that, quote, we did not call the police because we know that there are people who, from Sendero Luminoso, who have infiltrated the police. And things could be worse for us if we had done so. Now, this guy is a professional security man. That's his job is to protect this company from threats from Sendero Luminoso. In his considered opinion, it would have made the situation worse. How much worse could it get? I mean, they tried to kill him. That's true. They blew up a truck. My thinking on that is that if the police were involved and they could make their whereabouts, if the police knew their whereabouts and communicated their whereabouts on a day-to-day basis to Sendero, the situation could have been much worse. Whose whereabouts? The victim? The victim, yes. Didn't the victim hire his own security force? He did. And that's another aspect of his testimony that I think the Board should have considered. But they didn't consider any of his testimony. And we know from the Ornelas decision that credible testimony can be sufficient to meet this burden of showing that the government is unable or unwilling to protect. But here, they really didn't consider his testimony. But if I take his testimony for its face value, what he is saying is I am suspicious of the police because I think they've been infiltrated. That still doesn't answer the question of whether or not the government was unable or unwilling to control. The fact that he had a subjective belief that that was true doesn't mean that if he had notified the government, they wouldn't have done anything. Two points, Your Honor. I mean, first, I think it was legal error for them not to consider the testimony. That decision when they say the only other evidence is this country report, that makes clear they're not even considering the testimony. I think that's a legal error. But secondly, what they're saying here is that there is no evidence, and therefore, you failed to meet your burden. That's the essence of their conclusion. But there is evidence. And the only evidence in the record, if you believe the Board here, is his testimony that testimony supports his view. And in my view, if that's the only evidence, well, that arguably should be enough. At a minimum, the case has to go back on that point so they can consider the evidence that they expressly ignored.  We have a little time for rebuttal. We'll hear from the government at this time. Counsel? Good morning, Your Honor. My name is Tracy McDonald from the United States Department of Justice Office of Immigration and Immigration, representing the Attorney General, the respondent in this case, Eric Holder. The Petitioner in this case has failed to prove that he was targeted by the Shining Path on account of a political opinion. The Petitioner must show that he held or that his persecutors believed that he held a political opinion and that he was persecuted based on that opinion. What do you know about the evidence about the slogans spray painted on the walls of the fish processing plant? Yes, Your Honor. The statements made by the Shining Path to the Petitioner and his partners do not establish a connection between the acts of persecution and a political opinion. The evidence shows that the Shining Path was motivated solely by economic reasons because... Oh, come on. You don't believe that. They believe that the Petitioner and his partners... The object of Mao, post-Maoist, communist insurgency groups like Shining Path is to overthrow the government. That's their political objective, isn't it? Yes. However, the evidence in this case does not establish that the Petitioner or his partners were ever told by the Shining Path... And they not only want to overthrow the government, they want to exert state, Cuban-style government control over what would be formerly private enterprise, right? They want the government to own everything and control the workers' paradise like they have supposedly in Cuba. That's their object, isn't it? Yes. However, I believe there's no connection... So it is absolutely incorrect to say that their only object is to steal money. Well, their object was not based on a political opinion, however. Because, you know, if you do this to one company and you do it to half a dozen companies and you do it to a dozen companies, pretty soon you've affected the whole stream of commerce, right? True. Okay. Now, is there... Does the United States consider Sendero Luminoso a terrorist organization? Yes. And how long has it so considered them to be that? That, I don't know. I'd be happy to research it. At the time these events occurred with Mr. Reyes Reyes, was Sendero Luminoso considered a terrorist organization? Yes. Was on the State Department watch list? Yes, Your Honor. Okay. What else did the petitioner have to prove to establish that they were a dangerous, violent, revolutionary terrorist organization? That the government was unwilling or unable to control them. Do they still exist? Just because they were rampant. Do they still exist? Yes. How long have they been around? That, I don't know. Were they active at this time? Yes. Okay. However, just the bare fact that they were active at that time does not in and of itself conclude that the government was unable or unwilling to control them, nor specifically that the government was unable or unwilling to assist the petitioner in this case. We don't know that because he never tried to elicit their help. There have been instances in Latin America where former revolutionary groups have been incorporated into the government, laid down their arms. Nicaragua is probably the best example, where the Sandinistas are now a political party and their former revolutionary leader, Daniel Ortega, is now the president of the country. But that's not true in Peru, is it? I can't say that for sure. What would the petitioner have to have established to prove that the shining path, that the government authorities in Peru were unable or unwilling to control the group? He could have testified to specific incidents where he tried to go to the police after one of the supposed persecution attacks, and the police, they were, didn't help, or his situation was worsened by going to the police. He doesn't show any evidence of this. When did these, what time frame are we talking about here where these events occurred? 1989 to 90. Was this when Alberto Fujimori was president of Peru? I am not sure, Your Honor. Was this at or around the time that the shining path took over an entire embassy, about a block away from the presidential palace? Yes, I believe so. Was that generally known? I believe so, yes. Could the I.J. have taken judicial notice of that? I know he wasn't asked, but could he have? Yes, he could have, but we have to stick to what's in the administrative record, so whether or not he would have. In this case, it was petitioner's burden, I take it. Yes. All right. The evidence does not establish that the petitioners or his partners were ever told that the shining path did not, or that they did not, the shining path believed that they did not agree with their political views, or that the shining path indicated that its demands were motivated by the petitioner's political opinions. How is this case different from the series of cases involving the New People's Army in the Philippines and their extortion of business owners? Well, for instance, in the Agbuya case, Agbuya v. INS, the petitioner in that case was found to have been singled out for persecution because of an imputed political opinion. Petitioner in this case, that does not apply in this case. He was not – there's no evidence that he was singled out for persecution. You don't think shining path imputed capitalistic motives to these business owners? No, Your Honor. And the slogan? And in other terms, no. Doesn't establish that? Does not. And also, unlike Agbuya, the petitioner did not do anything that the shining path viewed as being politically aligned with the government or against the shining path. They didn't explicitly, as in Agbuya v. INS, the petitioner was specifically told by their persecutors that it was because of her work and their belief that her work was connected to a pro-government. She was trying to establish, in that case, a union organization at the company that would be separate and apart from the unions that the NPA tried to control. Is that right? Yes. Did she report these incidents to police, her authorities? No, she did not. Okay. The shining path's comments to the petitioner and his business partners did not indicate that they were motivated by an imputed political opinion. And there's no evidence indicating that the shining path perceived the petitioner to be pro-government or against the shining path. I might agree with the first part of your clause, but I'm having trouble with the second part of what you just said in light of the slogans on the wall. Because if we know that the aims of the shining path are basically to establish a communist-style government in Peru, then the slogans that they painted are perfectly consistent with that political view, are they not? Accusing the petitioner of basically making his money off the sweat of the poor worker? I would not say that that statement in and of itself. You don't think that's consistent with the shining path's political goals or views? Well, yes, I'm sure it's consistent with it. However, I don't feel that just that statement in and of itself without more proves that they were politically motivated or that they were imputing a political opinion upon the petitioner in this case. As far as the petitioner was also required to show that the government was unable or unwilling to control his persecutor. And he did not do this in this case. Again, he failed to report the incident and he failed to testify to any reasoning as to why it should be believed that going to the police would have hindered his circumstances. What's your response to Mr. Job's argument that it was legal error for the DIA to say that the only evidence was, and they listed it, and not refer to the testimony of the petitioner? I disagree that it's legal error because, again, he did not testify to any specific evidence as to why he felt that going to the police would be too harsh. He was responsible for security at the business, wasn't he? Yes. And he said that they were afraid to report these kinds of extortions to police authorities because Sindera Lumanoso had infiltrated the police. Does the DIA comment on that testimony at all? No, they do not. Do we assume that testimony to be credible on this record? Yes, we do. Okay. You're a little over your time. Thank you for coming in this morning. Mr. Job, you have about a half a minute for rebuttal. In Agbuya, the petitioner was accused of, quote, wrongdoings to the laborers of the Philippines. And the Court found that to be evidence that the NPA had imputed a political opinion to her. Here, this man was accused of making money on the sweat of the poor. Very little difference between the two. The same conclusion applies. The communist guerrillas in Peru imputed a pro-capitalist political opinion to this individual and attempted and, in fact, persecuted him on that basis. Okay. Counsel, may I ask a question? Sure. Assuming that in all of the countries throughout the world in which civil wars and insurgencies are currently ongoing, that the opponents and proponents attribute political motives to their opponents and want to eliminate them, is it your position that in any country in which the existing government cannot eradicate the opposition and eliminate violence, that any affiliate or supporter of the current government is automatically entitled to asylum in the United States? Not at all. No. That's not our position. How would you draw a distinction if, in fact, the requirement of showing that the government is either unwilling or unable to control violence requires a showing that the government has eradicated it or almost eradicated it? The petitioner would have the obligation of demonstrating that the government is unable or unwilling to protect him as an individual. And in this particular case, the Board says there's no evidence one way or the other, but that's simply not true because there is evidence supporting the petitioner's position, and that's his credible testimony. And this Court has ruled that an individual's credible testimony can be sufficient to meet that burden, and it's our view, therefore, that the Board's explicit failure to consider that evidence is legal error. Moreover, if that's the only evidence of record, and the Board says that implicitly, at least that is the only evidence of record, then that testimony, that credible testimony, would compel the conclusion that in this particular case, this individual could not have gone to the police because they had been infiltrated by Sendero Luminoso. Well, that's where I'm having problems. Clearly, he established his subjective belief. No question about that. Right. But is there also an objective component that he has to show? I guess, Your Honor, my response to that is we have to accept his testimony as credible. Okay. I'm giving you full credence to what he believed. And he's a security officer, and he said, quote, we know that the police had been infiltrated by Sendero Luminoso. I think you have to credit that. And I see that. I still don't see it. I understand your point. You're not getting me beyond subjective belief. Then I think the better, the best way to handle that, Your Honor, is to simply recognize that the Board didn't grapple with this question. At all. And under Ventura, you shouldn't be grappling with this question in the first instance. Unless I'm trying to decide whether or not substantial evidence compels the opposite. But they explicitly declined or refused to consider the evidence. So it seems to me that if we're dealing with a factual question, which unable or unwilling to control seems to me to be a factual question, they explicitly declined to consider this evidence. Under Ventura, they should consider the evidence in the first instance. The case should go back on that basis.  Thank you. Our questions of Mr. Jove took him a little over his time, counsel. Would you like to respond to either of his answers to the questions? You don't have to, but if you'd like to. Okay. Thank you. Thank you both for your arguments. The case just argued will be submitted for decision.
judges: Hawkins, Tallman, Singleton